IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CONNIE D SANCHEZ,**

       **Plaintiff,**

vs.                                                                                                                              **Civ. No. 03-878 RHS**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, filed January 6 , 2004. [Doc. No.11].  Plaintiff, age 40, alleges a disability which commenced on April 22, 1999 due to fibromyalgia, chronic pain, manic depression with suicidal thought, bilateral carpal tunnel syndrome, anxiety attacks and forgetfulness.

       The Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the application, concluding that Plaintiff has a residual functional capacity to perform a restricted range of light work.  The Appeals Council denied Plaintiff's request for review and  the ALJ's decision therefore  is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

At the time of the Commissioner's final decision, claimant was 38 years old with a high school education. Her past relevant work experience was as a fast food worker.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to include all Plaintiff's limitations in his hypothetical questions to the vocational expert (VE); (2) Plaintiff does not possess skills for jobs identified by the VE; and (3) the ALJ failed to properly evaluate Plaintiff's credibility.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to

2

perform work done in the past.    At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work.  <u>Thompson</u> at 1487 (citations omitted).

In this case, the ALJ determined that the Plaintiff met her burden of proof on the first four steps of the sequential evaluation process. After reviewing Plaintiff's medical records, symptoms and complaints, and the VE's testimony, the ALJ rejected her claim for benefits at step five.  In reaching that decision, the ALJ made the following findings: (1) Sanchez had not engaged in substantial gainful activity since her protective filing date for SSI benefits; (2) Sanchez had an impairment or a combination of impairments that were severe; (3) the impairments, alone or in combination, did not meet or medically equal one of the listed impairments; (4) Plaintiff's allegations regarding her limitations were not totally credible; (5) the ALJ considered all the medical opinions in the record regarding the severity of claimant's impairments; (6) Sanchez had the residual functional capacity for a range of light work with additional restrictions including:  the need to alternate sitting and standing at will, a moderate limitation of the ability to maintain attention and concentration and a moderate limitation of the ability to follow detailed instructions; (7) she was unable to perform any category of her past relevant work; (8) she was a younger individual; (9) she had a high school education; (10) Sanchez had the RFC to perform a range of light work; (11) there were significant numbers of jobs in the national economy that she could perform; and  (12) Sanchez was not disabled at any time through the date of the decision.  <u>Tr. at 22-23</u>.

**First Alleged Error**

Plaintiff contends that the ALJ's residual functional capacity determination is not

3

supported by substantial evidence because the ALJ erred as a matter of law in his use of hypothetical questions to the vocational expert.  A vocational expert's testimony in response to a hypothetical question which contains assumptions based on the record can provide substantial evidence to support the ALJ's findings.  <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1341 (10th Cir. 1993); <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991).  Hypothetical questions in this context must reflect with precision all of [the claimant's] impairments, but the questions need only reflect impairments and limitations that are borne out by the evidentiary record.  <u>Decker v. Chater</u>, 86 F.3d 953, 955 (10th Cir. 1996) (citing <u>Evans v. Chater</u>, 55 F.3d 530, 532 (10th Cir. 1995)).

     The ALJ posed a series of hypothetical questions to the VE which included Plaintiff's age, educational background and her past relevant work history. The first question included the limitations of lifting and carrying twenty (50) pounds occasionally and twenty-five (25) pounds frequently. The vocational expert responded that a person with those limitations would be able to return to a position as a fast food worker.  <u>Tr. at 479-480</u>.

     The second question posed the limitations of lifting and carrying twenty (20) pounds occasionally and ten (10) pounds frequently and the necessity to change positions periodically. The vocational expert responded that such a claimant would only be able to return to past work if the requirement that she change positions would meet the standard break period for a fast food worker which he explained is about every two or two and one-half hours. However, the VE stated that the limitations would comport with light non-skilled work and that the person described in this hypothetical would be able to perform four particular jobs - companion, personal attendant, school bus monitor and cashier supplied with a stool for sitting if needed. <u>Tr at 480-481</u>.

     Hypothetical three described limitations in attention and concentration, understanding

4

detailed instructions and following through on detailed instructions. The VE responded that if moderate limitation in attention to task would not impair pace and persistence, then the positions he had mentioned in response to question two would remain intact. Tr. at 481. The ALJ then added a moderate limitation in "the people areas," interaction with the public, supervisors and co-workers. The VE stated that limitation would probably eliminate all of the positions he had listed except that of cashier supplied with a stool. Tr.at 482.

Hypothetical four described limitations including only occasional walking, climbing two or three stairs, no kneeling, no bending over, sit/stand limited to five minutes each, lifting and carrying limited to 10 pounds occasionally, fine gross manipulation limit and the necessity to take three or four rest periods a day for an hour. The VE responded that would eliminate all work. Id.

Plaintiff argues that in his hypothetical questions to the vocational expert, the ALJ failed to include Plaintiffs ability to sit or stand for only 20-30 minutes at a time, failed to include all the mental limitations found by the consultative psychiatrist and failed to include limitations regarding manual manipulation of objects due to carpal tunnel syndrome.

A. Sit and stand

Where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination. See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987). The ALJ correctly asked the VE to clarify the implications of Plaintiff's limitations for the occupational base. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995).

The records of treating and consulting physicians and Plaintiff's testimony reflect

different assessments of Plaintiff's ability to sit and stand. On February 21, 2002, Plaintiff was examined by consulting physician Eugene Toner who found that "due to the lack of objective findings on examination, I feel the claimant should be allowed to do things that would be considered normal for her age, size and sex." Tr. at 340. On February 28, 2002, non-examining consulting physician Nancy Nickerson completed a residual functional capacity assessment which included no requirement that Ms. Sanchez had to periodically alternate sitting and standing. Tr. at 342-349. On November 8, 2002, Plaintiff's treating physician, Susan Lucas, opined that Ms. Sanchez would need to alter her position every twenty to thirty minutes. Tr. at 444. Plaintiff testified that she could only sit about five minutes and stand for three to five minutes. Tr. at 468.

      The ALJ evaluated the medical evidence and Plaintiff's testimony and specifically found that Ms. Sanchez needed "to alternate sitting and standing at will." Tr. at 22. The ALJ asked the vocational expert to testify based on limitations which included the assumption that the hypothetical claimant "must alternate sitting and standing periodically." Tr. at 480. It is apparent from the vocational expert's testimony that he was aware of the sit/stand requirement and factored it into the jobs he offered. See Tr. at 480-483. However, the Court cannot conclude from the transcript that the VE understood "periodically" to mean "at will." Some of the jobs recommended by the VE (i.e. bus attendant) seem to be particularly structured so that a person cannot sit or stand at will. The Court is not able to determine whether the vocational expert's response to the hypothetical would have remained the same if the ALJ had included the limitation that Plaintiff had to be allowed to sit and stand at will. The Court must therefore remand this case for further proceedings.

B. Mental Symptoms

When, as in the instant case, there is evidence of a mental impairment which allegedly prevent the Plaintiff from working, the ALJ must follow a specific procedure for evaluating mental impairments set forth in the applicable regulation and listing of impairments and document the procedure accordingly. 20 C. F. R. §404.1520a; see also Cruse v. U.S.Dept. of Health and Hum.Serv., 49 F. 3d 614, 616 (10th Cir. 1995). This procedure first requires the Commissioner to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2).  The Commissioner must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria.  Robertson v. Chater, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995), (citing 20 C.F.R. § 404.1520a(b)(3) and Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995)).  The Commissioner must record her conclusions on a standard document, the Psychiatric Review Technique Form ("PRT" form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria.  Id., Cruse, 49 F.3d at 617.

Plaintiff was referred by the Commissioner to Dr. Steven Sacks for a consultative psychiatric examination.  According to Dr. Sacks, Plaintiff can understand and follow both simple and somewhat more complex instructions. She can maintain the attention required to perform simple repetitive tasks. He observed that "the claimant would probably have difficulty relating with other workers and supervisors or the public at the present time....[S]he would have difficulty withstanding the stresses and pressures associated with day-to day work activities of a moderate to severe level."  Tr. at 318.  Dr. Sacks noted that plaintiff "appears to be experiencing a major

depression, recurrent" and assigned her a GAF score of 45.[1]  Such a score indicates serious symptoms (e. g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupation, or school functioning (e. g., no friends, unable to keep a job).Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.

State agency psychologist, L. LeRoy Gabaldon, reviewed the record and completed the PRT form. He noted that Ms. Sanchez had mild restriction of activities of daily living, mild difficulty in maintaining social functioning, mild difficulty in maintaining concentration, persistence and pace and no repeated episodes of decompensation. State agency physician, Scott Walker, concurred with that assessment.

The ALJ found that Plaintiff had a moderate limitation of the ability to maintain attention and concentration and a moderate limitation of the ability to follow detailed instructions. Plaintiff contends that it was improper for the ALJ to reject the consulting psychiatrist's opinion that Plaintiff would have moderate to severe difficulty withstanding the stresses and pressure of day-today work activities and that she would have difficulty relating to other workers, supervisors and the public.

The ALJ's duty is to resolve conflicts in the record, and he may reject a physician's opinion if he gives specific, legitimate reasons for doing so. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir.1988); Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 810 (10th Cir. 1991).

---

[1] A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994) at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death ). Id. at 32.

It is also clearly within the ALJ's authority to reject physician's opinions which are unsupported by or inconsistent with other objective evidence of record. See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ discussed the opinion of Dr. Sacks and explained that he chose not to rely upon that opinion because Dr. Sacks based his diagnosis on Plaintiff's own description of subjective complaints. Tr. at 14. He also observed that Plaintiff has not received consistent mental health treatment despite claiming that she suffers from debilitating mental problems.Tr. at 20.

The record includes opinions from treating physicians which supports the conclusions of Dr. Sacks. Psychiatrist Wilhelmina Tengco treated Plaintiff from October 1995 to September 1999. On March 23, 1999, Dr. Tengco wrote that Plaintiff suffered from a major depressive order, recurrent and an anxiety disorder. She opined that "[t]hese pervasive, recurrent mental disorders are significantly influenced by the autoimmune disorders she is suffering from. These debilitating conditions impair her ability to work." Tr. at 20. On January 1, 2002, Plaintiff's primary care provider, Dr. Lucas, reported that "the patient is on a maximal dose of Prozac and continues to have multiple symptoms of a major depression." Tr. at 379. On November 4, 2002, Dr. Lucas wrote that she "suspect[ed that] uncontrolled depression greatly exacerbates [Plaintiff's] pain sensation." Tr. at 445.

While expressly disregarding the opinions of the consultative psychiatrist and Plaintiff's treating physician, the ALJ relied on the opinions of a psychologist and a physician who neither treated nor examined Plaintiff but instead merely reviewed the records. It appears to the Court that the ALJ may have substituted his expertise for that of the examining psychiatrist, something he may not do. See Miller v Chater, 99 F.3d 972, 977 (10th Cir. 1996). On remand, the ALJ

9

should give specific reasons for rejecting the opinions of the treating and consulting psychiatrists.

C.  Carpal tunnel syndrome

Plaintiff developed symptoms of carpal tunnel syndrome in 1997 and nerve conduction studies done at that time showed a mild nerve conduction delay in the right carpal tunnel  Tr.at 145. Subsequently, other physicians have also diagnosed carpal tunnel syndrome. 407, 443. Plaintiff testified that she has weakness and numbness in both hands. Tr. at 484. Dr. Lucas stated that Plaintiff's fine manipulation activity was significantly limited. Tr. at 444.  When the ALJ included a manipulative limitation (along with many other limitations) in his last hypothetical question, the VE responded that all jobs would be eliminated.

On remand, the ALJ should thoroughly discuss his reasons for rejecting these medical opinions or alternatively should include a manipulative limitation in his hypothetical questions to the VE.

**Second Alleged Error**

Plaintiff contends that she does not possess the skills required by jobs identified by the VE.  Because the hypothetical questions posed to the VE did not reflect all Plaintiff's impairments with precision and the Court has consequently determined that this case must be remanded to the Commissioner for a rehearing, it is unnecessary to address this argument.

**Third Alleged Error**

Plaintiff next contends that the ALJ erred in finding that her complaints were not fully credible. The ALJ determined that "the claimant's  allegations regarding her limitations are not well supported by objective medical evidence and clinical findings and are therefore not credible."

Tr. at 22.

It is well-established that subjective testimony alone cannot establish a finding of disability. Gatson v.Bowen, 838 F. 2d 442, 447 (10th Cir. 1988). Objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. Id.

When determining the credibility of pain testimony, the ALJ should consider factors such as the levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility, the motivation of and relationship between the Plaintiff and other witnesses, and the consistency or compatibility of non-medical testimony with the objective medical record. Kepler v.Chater, 68 F.3d 387, 391 (10th Cir. 1995). The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. Broadbent v Harris, 698 F. 2d 407, 413 (10th Cir. 1983).

The ALJ considered a number of factors in arriving at his conclusion that Plaintiff was not wholly credible including her demeanor while testifying, inconsistencies between her testimony and her other statements in the record, her drug use and drug seeking behavior, lack of support for her asserted limitations in the medical records; and "symptom magnification" noted by two physicians. Tr. at 20. The ALJ articulated several specific reasons for questioning Plaintiff's credibility. Id. The Court has reviewed the entire record and finds that the ALJ considered both the objective and subjective evidence and applied the correct legal standards for his credibility determination. Substantial evidence supports his determination and the ALJ's decision on this point is affirmed.

**Conclusion**

Based upon the reasons set forth above, the Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Hearing [Doc. No. 11] is **GRANTED**.  On remand, the Commissioner shall re-evaluate the medical opinion of the consulting psychiatrist, Dr. Sacks, in accordance with this opinion.  In addition, the ALJ shall ensure that any hypothetical question to a vocational expert shall relate with precision all of Plaintiff's impairments.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE